7 F.3d 1044
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA, Plaintiff-Appellant,
v.
The FIRST NATIONAL BANK AND TRUST COMPANY OF TULSA, a
national banking association, as successor personal
representative of the estate of F. Paul Thieman, Jr.,
deceased; and Norma Applegate, successor trustee of the
Gladys M. Thieman Trust, and F. Paul Thieman and Gladys M.
Thieman Trust, Defendant-Appellee.
 Nos. 90-5259, 91-5009.
 United States Court of Appeals, Tenth Circuit.
 Oct. 12, 1993.
 
 Before SEYMOUR and BARRETT, Circuit Judges, and HUNTER*, District Judge.
 ORDER AND JUDGMENT[1]
 BARRETT, Senior Circuit Judge.
 
 
 1
 General Accident Insurance Company of America (General Accident) appeals the order of the district court granting judgment in favor of First National Bank and Trust Company of Tulsa (First National), a national banking association, as successor personal representative of the Estate of F. Paul Thieman, Jr., deceased, and Norma Applegate (Applegate), successor trustee of the Gladys M. Thieman Trust, and F. Paul Thieman and Gladys M. Thieman Trust. A brief summary of the undisputed facts will facilitate our review.
 
 
 2
 Until his death, F. Paul Thieman (Thieman)[2] was a licensed practicing attorney in the State of Oklahoma, and a partner in the Thieman and Kronfeld law firm. The law firm held a Lawyers Professional Liability Insurance Policy issued by General Accident, which was in effect from December 1, 1983 to December 1, 1984. The policy provided for coverage, in part, as follows:
 
 THE COVERAGE
 
 3
 1. ... To pay on behalf of the insured all sums in excess of the deductible amount stated in the Declarations which the insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD:
 
 
 4
 (a) by reason of any act, error or omission in professional services rendered or that should have been rendered by the insured or by any person for whose acts, errors or omissions the insured is legally responsible, and arising out of the conduct of insured's profession as a lawyer or notary public;
 
 
 5
 * * *
 
 
 6
 * * *
 
 THE EXCLUSIONS
 1. This policy does not apply:
 
 7
 (a) to any judgment or final adjudication based upon or arising out of any dishonest, deliberately fraudulent, criminal, maliciously or deliberately wrongful acts or omissions committed by the Insured. However, notwithstanding the foregoing, the Company will provide a defense for any such claims without any liability on the part of the Company to pay such sums as the Insured shall become legally obligated to pay as damages;
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 (Appellant's Appendix, Tab 8, p. 3-4).
 
 
 11
 In 1980, Gladys M. Thieman formed the Gladys M. Thieman Trust (Trust), for the purpose of paying for her care and support during her lifetime. Gladys M. Thieman conveyed substantially all her assets and property to the Trust. Thieman was designated as the trustee of the Trust. Applegate was designated as the successor trustee, to serve if Thieman was unable to perform his duties. During his lifetime, Thieman acted as trustee of the Trust, and was the only person known to have made disbursements from the Trust.
 
 
 12
 Thieman died on September 29, 1984, and, under the terms of the Trust, Applegate became successor trustee. Shortly thereafter, she discovered that only $500 remained in the Trust bank account. On December, 20, 1984, Applegate submitted a creditor's claim to the executrix of the Thieman estate. The creditor's claim stated as follows:
 
 
 13
 The claim is for funds and assets misappropriated from said trust by decedent while decedent was serving as trustee of said trust, and is in an amount not less than $250,000., nor more than $1,000,000.
 
 
 14
 The amount of the claim will be determined when an accounting for said trust is completed.
 
 
 15
 (Appellant's Appendix, Tab 8, p. 6).
 
 
 16
 On January 17, 1985, the creditor's claim submitted by Applegate was approved as a contingent claim by the executrix of the estate, and subsequently the contingent claim was approved by the probate court on January 22, 1985. The executrix of the estate resigned, and First National was thereafter appointed as successor personal representative.
 
 
 17
 On July 30, 1985, Applegate filed a lawsuit against First National, alleging violations by Thieman as trustee, and seeking recovery of specific assets that Applegate contended were misappropriated from the Trust by Thieman. Applegate later amended her petition to include allegations that Thieman had drafted the Trust, and had breached his fiduciary duty owed by an attorney to his client. Applegate further amended her petition to include allegations of negligence and mistake.
 
 
 18
 Following the filing of the amended petition by Applegate, First National notified General Accident that a claim had been made against Thieman's estate. General Accident then undertook defense of the suit, pursuant to the terms and conditions of the insurance policy. However, General Accident reserved the right to deny coverage by reason of the exclusionary clause in the policy.
 
 
 19
 After First National examined all of the available records, it agreed that $325,000 was the amount of money missing from the Trust. Subsequently, Applegate and First National entered into a settlement agreement for the contingent claim, and on December 1, 1987, the probate court entered an order approving the settlement, setting the amount of the creditor's claim at $325,000. This constituted a final adjudication as to the debt owed by the Thieman Estate to the Trust. (Appellant's Appendix, Tab 8, p. 8).
 
 
 20
 Subsequent to the final adjudication, General Accident filed a declaratory action against First National and Applegate alleging that the insurance policy provided no coverage for the claims made by Applegate because Thieman's actions fell within the exclusionary clause. (Appellant's Appendix, Tab 1, p. 6). A non-jury trial was held, in which the district court implemented its "streamlined nonjury trial procedure" known as the affidavit procedure. United States v. Hardage, 750 F.Supp. 1460, 1463 (W.D.Okla.1990), aff'd, 982 F.2d 1436 (10th Cir.1992), petition for cert. filed, 61 U.S.L.W. 3870 (June 17, 1993) (No. 92-1995); Equal Employment Opportunity Commission v. Hood & McQueen, Inc., 758 F.Supp. 1440, 1443 (W.D.Okla.1991) aff'd, 956 F.2d 944 (10th Cir.1992), cert. denied, 113 S.Ct. 60 (1992).[3]
 
 
 21
 Based upon the evidence presented at trial, the district court made findings of fact with which we agree. (See attached Findings of Fact, Conclusions of Law and Judgment dated September 13, 1990). The court found, inter alia, that the affidavit of General Accident's sole witness who could prove Thieman acted dishonestly or in a manner consistent with the other exclusion categories, had been "inartfully drafted, failing to track the testimony [Edward] Mysock[4] intended to give.... [that], the affidavit was reviewed and signed in haste by the witness Mysock.... [and that] the affidavit contained numerous errors and misstatements and was thoroughly impeached on cross examination." (Appellant's Appendix, Tab 8, p. 12). The court concluded that even if it had accepted all of Mysock's testimony, the probate order would have only been a final adjudication arising out of an alleged dishonest misappropriation, not an established dishonest misappropriation.
 
 
 22
 On appeal, General Accident contends that the district court erred in holding that the misappropriation did not invoke the exclusionary provision of the policy, and that there was insufficient evidence to support a finding that Thieman's acts as trustee did not fall within the exclusionary provision of the policy. General Accident further contends that it was error for the district court to refuse to consider extrinsic evidence to interpret the meaning of the exclusionary provision of the policy. In her cross-appeal, Applegate contends that the district court erred in failing to award prejudgment interest and attorney fees. (See attached Order dated November 16, 1990).
 
 I.
 
 23
 We hold that the district court did not err in finding Thieman's actions did not invoke the exclusionary clause of the policy. We adopt and incorporate the district court's findings of fact and conclusions of law regarding General Accident's liability.
 
 
 24
 Applegate, successor Trustee of the Gladys M. Thieman Trust, filed a lawsuit against First National, personal representative of the Thieman Estate, alleging that Thieman had misappropriated funds and assets from the Gladys M. Thieman Trust by negligence and mistake. General Accident defended pursuant to the Professional Liability Policy issued to Thieman and his law firm. Thereafter, Applegate and First National examined all available records and entered into a settlement agreement approving the creditor's claim in the amount of $325,000. The probate court entered an order approving the claim, thus fixing the Thieman Estate's liability.
 
 
 25
 Thereafter, General Accident filed a declaratory judgment action against First National and Applegate, Trustee, alleging that the insurance policy did not provide coverage inasmuch as the acts of Thieman fell within the exclusionary language, i.e., "dishonesty, deliberately fraudulent, criminal, maliciously or deliberately wrongful acts or omissions" committed by the insured, F. Paul Thieman, against the Gladys M. Thieman Trust. A non-jury trial was held. Based on the evidence, the court concluded that there was no evidence that Thieman had acted dishonestly or fraudulently in misappropriating the Gladys M. Thieman Trust assets; accordingly, the exclusionary clause did not apply.
 
 
 26
 We have reviewed the record and hold that the district court's findings are not clearly erroneous. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100 (1969); United States v. United States Gypsum Co., 333 U.S. 364 (1948).
 
 II.
 
 27
 We hold that the district court erred in denying an award of attorney fees to Applegate, and in denying an award of prejudgment interest pursuant to Title 36 Okla.Stat. 3629(B) (1990).
 
 
 28
 The district court found as a general rule that litigants pay their own attorney fees. (Appellee's Appendix, Tab 6, p. 21). We agree. The general rule does not apply, however, under Title 36 3629(B), which provides for the award of fees. Thompson v. Shelter Mut. Ins., 875 F.2d 1460, 1464 (10th Cir.1989), An-Son Corp. v. Holland-America Ins. Co., 767 F.2d 700, 703 (10th Cir.1985), and the Oklahoma Supreme Court have read this statute broadly. Shinault v. Mid-Century Ins. Co., 654 P.2d 618 (Okla.1982); McCorkle v. Great Atlantic Ins. Co., 637 P.2d 583, 586 (Okla.1981).
 
 
 29
 Title 36 Okla.Stat. 3629(B) reads, in part,
 
 
 30
 B. It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days of receipt of that proof of loss. Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party. For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party. If the insured is the prevailing party, the court in rendering judgment shall add interest on the verdict at the rate of fifteen percent (15%) per year from the date the loss was payable pursuant to the provisions of the contract to the date of the verdict. This provision shall not apply to uninsured motorist coverage.
 
 
 31
 Thus, this statute requires that attorney fees be awarded to the insured if the insured is the prevailing party. It is apparent that Applegate was the prevailing party, but the remaining question is whether Applegate was the insured. We hold that Applegate was the insured.
 
 
 32
 The insurance policy issued by General Accident defines an insured, in part, as "... the firm ... or any lawyer ... who during the policy period becomes a partner, officer, director or employee of the firm ... [and] as respects to the liability of each Insured as is otherwise covered herein, the heirs, executors, administrators, assigns and legal representatives of each Insured in the event of death, incapacity or bankruptcy." (Appellant's Appendix, Tab 13, p. 9). This policy definition of an "insured" is in conflict with the definition of "insured" under 36 Okla.Stat. 3629(B) relative to the award of attorney fees and costs. In Oklahoma where provisions of a contract are in conflict with terms of a statute, though not expressly prohibited, they will not be enforced. Taylor v. Taylor, 832 P.2d 429 (Okla.Ct.App.1991) (contracts in derogation of a statute are unlawful); Dycus v. Belco Industries, Inc., 569 P.2d 553 (Okla.App.1977); Stanolind Oil & Gas Co. v. Phillips, 157 P.2d 751 (Okla.1945); Walker v. W.T. Rawleigh Co., 271 P. 166 (Okla.1928). Title 15 Okla.Stat. 211 declares that such contracts are unlawful. Existing law is presumed to be part of every contract, even though express terms therein indicate otherwise. Farley v. Board of Education of City of Perry, 162 P.2d 797 (Okla.1917). In City Nat. Bank v. Jackson Nat. Life Ins., 804 P.2d 463, 469 (Okla.App.1990), the court, in addressing and construing 36 Okla.Stat. 3625(B) held that "... we deem the Legislature to have intended that attorney fees should be recoverable generally in all actions on insurance policies under 3629(B) irrespective of the particular type of policy, unless specifically elsewhere proscribed."
 
 
 33
 Under Oklahoma law, a district court's order allowing or disallowing an award of attorney's fees must be upheld if reasonable, and modified or vacated only if the court has abused its discretion. Southwestern Bell Tel. Co. v. Parker Pest Control, Inc., 737 P.2d 1186 (Okla.1987). We hold that the district court abused its discretion in failing to award Applegate attorney's fees, costs, and prejudgment interest pursuant to 3629(B).
 
 
 34
 We ordered that this case be abated on November 6, 1992, pending disposition by the Oklahoma Supreme Court on its grant of a petition for certiorari in the case of Ballinger v. Security Connecticut Life Ins. Co., (Okla.Ct.App., Feb. 18, 1992), No. 74,764. The Oklahoma Supreme Court rendered its opinion in Ballinger on May 18, 1993, (1993 WL 163450), and the parties have thoroughly briefed its relevance to the instant case.
 
 
 35
 In the next to last paragraph of the Ballinger opinion (a 5-4 opinion with the four dissenters voting that 36 Okla.Stat. 3629(B) applied), the majority listed reasons why plaintiff Kim Ballinger was not to be considered the "prevailing party" entitled to attorney's fees under 3629(B). Her lawsuit, unlike the instant case, was not necessitated by the defendant insurance company's refusal to pay out on the policy. In our case, General Accident denied coverage. In Ballinger, the sole issue was to determine the proper beneficiary of the proceeds. There, the insurance company did not submit a written offer of settlement or a rejection of the claim because at all times the company was ready and willing to pay the proceeds to the proper beneficiary and in fact tendered the proceeds into the court registry. By contrast, in our case General Accident denied Applegate's claim on the basis that the acts of Thieman in "misappropriating" funds and assets from the Trust were not covered under the Professional Lawyers' policy because they were within the exclusionary provision constituting "dishonesty, deliberately fraudulent, criminal, maliciously or deliberately wrongful acts or omissions." This contention was litigated; General Accident lost and Applegate prevailed. In our view, the Oklahoma courts would hold that Applegate is an "insured" under 3629(B) because she is the "prevailing party."
 
 
 36
 We AFFIRM the district court's finding of General Accident's liability on the subject policy for the reasons stated by the court in its Statement of Facts, Conclusions of Law, and Judgment of September 13, 1990. We REVERSE the district court's order of November 16, 1990, denying Applegate's request for allowance of attorney's fees, costs and prejudgment interest under 3629(B). We REMAND to the district court for allowance of reasonable attorney's fees, costs and prejudgment interest to defendant Applegate.
 
 
 37
 AFFIRMED in part, REVERSED in part, and REMANDED with instructions.
 
 APPENDIX
 
 38
 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
 
 DISTRICT OF OKLAHOMA
 GENERAL ACCIDENT INSURANCE COMPANY
 
 39
 OF AMERICA,
 
 
 40
 Plaintiff,
 
 
 41
 v.
 
 FIRST NATIONAL BANK AND TRUST
 OF TULSA, a national banking
 
 42
 association, as successor personal
 
 
 43
 representative of the estate of
 
 
 44
 F. Paul Thieman, Jr., deceased; and,
 
 NORMA APPLEGATE, successor trustee of
 
 45
 the Gladys M. Thieman Trust, and
 
 F. Paul Thieman and Gladys M. Thieman
 
 46
 Trust,
 
 
 47
 Defendants.
 
 
 48
 FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT
 
 
 49
 Filed Sept. 13, 1990.
 
 Case No. 88-C-254-P
 I. NATURE OF ACTION
 
 50
 A. This is an action for Declaratory Judgment brought by plaintiff, General Accident Insurance Company ("General Accident"), union seeks a determination of its rights and liabilities under a professional liability insurance policy. The determination is sought in connection with a claim made by Norma Applegate ("Applegate"), Successor Trustee of the Gladys M. Thieman Trust ("Thieman Trust"), against the estate of F. Paul Thieman, Jr. General Accident contends that there is no coverage under its policy because the claim by Applegate falls within the exclusions of its policy, as set forth in Section V of this Order.
 
 
 51
 Applegate, as trustee, contends that her judgment falls within the terms and conditions of the policy and is not barred by the exclusions contained therein. [Supplemental Pretrial Order at 1, August 23, 1990].
 
 II. FEDERAL JURISDICTION
 
 52
 Federal jurisdiction is invoked pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, diversity of citizenship between the parties, 28 U.S.C. 1332, and amount in controversy exceeding the sum of $10,000 exclusive of interest and costs. [Supplemental Pretrial Order at 1, Aug. 23, 1990].
 
 III. PROCEDURE UTILIZED FOR NONJURY TRIAL
 
 53
 The Court utilized its standard affidavit procedure in this nonjury trial. The streamlined nonjury trial procedure involved the submission of witness affidavits in lieu of direct examination on most points. The parties were given an opportunity to present both supplemental direct examination and full cross-examination of the witnesses during trial. Also, as set forth below, the parties submitted comprehensive stipulations on undisputed matters.
 
 IV. ORDER IDENTIFYING TRIAL EXHIBITS
 
 54
 On August 24, 1990, the Court entered an "Order Identifying Trial Exhibits" which stated in part: "The attached exhibits were utilized in the trial of this matter and will be referenced in the Court's Findings of Fact and Conclusions of Law." [Order at 1, Aug. 24, 1990 (copy attached) ]. Accordingly, exhibits referenced herein will be identified in the same manner as they are identified in the August 24, 1990, Order.
 
 V. UNCONTESTED FACTS
 
 55
 On June 18, 1990, this Court issued a scheduling order in this matter. On July 24, 1990, pursuant to that scheduling order, the parties filed a stipulation of undisputed facts. Pursuant to the Court's scheduling order, this matter came on for trial on August 23, 1990. The trial began with the Court receiving into evidence the stipulation of uncontested facts. All parties stated that they had no objection to the Court receiving this stipulation into evidence. Accordingly, the Court adopts the following uncontested facts as part of its findings and conclusions. The following facts are set forth verbatim (except as to references to exhibits) as contained in the parties' July 24, 1990 filing:
 
 
 56
 1. F. Paul Thieman, Jr. ("Thieman"), during his lifetime was a duly licensed practicing attorney in the State of Oklahoma. Prior to his death, Thieman was a partner of the law firm of Thieman and Kronfeld.
 
 
 57
 2. Plaintiff General Accident Insurance Company of America "General Accident", issued their Lawyers Professional Liability Insurance Policy No. PN150043 the "policy", to the law firm of Thieman and Kronfeld. The policy period was from December 1, 1983 to December 1, 1984. The policy provided, among other things, as follows:
 
 THE COVERAGE
 
 58
 1. ... To pay on behalf of the insured all sums in excess of the deductible amount stated in the Declarations which the insured shall become legally obligated to pay as damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD:
 
 
 59
 (a) by reason of any act, error or omission in professional services rendered or that should have been rendered by the insured or by any person for whose acts, errors or omissions the insured is legally responsible, and arising out of the conduct of insured's profession as a lawyer or notary public;
 
 
 60
 * * *
 
 
 61
 * * *
 
 
 62
 PROVIDED ALWAYS THAT such act, error or omission or such personal injury happens:
 
 
 63
 (aa) during the policy period, or
 
 
 64
 (bb) prior to the policy period, provided that prior to the effective date of this policy:
 
 
 65
 * * *
 
 
 66
 * * *
 
 
 67
 2. the Insured has no basis to believe that the Insured had breached a professional duty or committed a personal injury; and * * *
 
 
 68
 When the insured renders or fails to render services as an administrator, conservator, receiver, executor, guardian, trustee, or in any similar fiduciary capacity, the Insured's acts and omissions in such capacity shall be deemed for the purpose of this section to be the performance of professional services for others in the Insured's capacity as a lawyer provided that this coverage shall not apply to any loss sustained by the Insured as the beneficiary or distributee of any trust or estate.
 
 THE EXCLUSIONS
 1. This policy does not apply:
 
 69
 (a) to any judgment or final adjudication based upon or arising out of any dishonest, deliberately fraudulent, criminal, maliciously or deliberately wrongful acts or omissions committed by the Insured. However, notwithstanding the foregoing, the Company will provide a defense for any such claims without any liability on the part of the Company to pay such sums as the Insured shall become legally obligated to pay as damages; * * *
 
 
 70
 The policy was in full force and effect at all times material to this action. See Order Identifying Trial Exhibits, Plaintiff's Ex. A.
 
 
 71
 3. In 1980, Gladys M. Thieman formed the Gladys M. Thieman Trust ("Trust"), to which she conveyed substantially all her assets and property. The purpose of the Trust was to pay for her care and support during her lifetime. Thieman was designated as a trustee of the Trust, and Norma Thieman Applegate was designated as a successor trustee in the event that Thieman was unable to serve.
 
 
 72
 4. During his lifetime, Thieman served as trustee of the Trust and was the only person known to have written checks or made disbursements from said Trust. Thieman's acts as trustee of the Gladys M. Thieman Trust fell within the coverage provided by the policy.
 
 
 73
 5. Thieman died on September 29, 1984. His widow, Roberta Sue Thieman, was appointed executrix of his estate on October 23, 1984, in Probate Cause No. P-84-1037, filed in the District Court of Tulsa County, Oklahoma, entitled In the Matter of the Estate of F. Paul Thieman, Jr., deceased. Roberta Sue Thieman, as executrix, purchased a non-practicing extension coverage option, extending coverage provided by the plaintiff insurer under Policy No. PN150043 until December 1, 1985.
 
 
 74
 6. Upon the death of Thieman, the defendant, Norma Thieman Applegate, became successor trustee of the Trust. Upon endeavoring to obtain funds to pay certain expenses which accumulated for the care and treatment of her mother, she discovered the only asset in the Trust bank account was the sum of $500.00.
 
 
 75
 7. Roberta Sue Thieman, as executrix of the Thieman estate, had retained Edward Mysock, an attorney, to assist her in the probate. He undertook an investigation to determine the assets and the liabilities of the estate. In an audit of the Trust, he became aware of the fact that a substantial sum of money was missing. He was contacted by Norma Applegate, successor trustee, who requested his assistance in locating the assets of the trust. Mr. Mysock advised Norma Applegate that because of a conflict in interest, he could not represent her and suggested that she contact Gary Jackson, an attorney and certified public accountant, to assist her in this matter.
 
 
 76
 8. Norma Applegate retained Gary Jackson to assist her in pursuing the assets of the Trust. Following his initial investigation, pursuant to advice from Gary Jackson and James Gotwals, Norma Applegate filed a Creditor's Claim for the amounts misappropriated by Thieman during his tenure as trustee. The Creditor's claim submitted by Norma Applegate, as Trustee for the Gladys M. Thieman Trust, stated as follows:
 
 
 77
 "The claim is for funds and assets misappropriated from said trust by decedent while decedent was serving as trustee of said trust, and is in an amount not less than $250,000, nor more than $1,000,000.
 
 
 78
 The amount of the claim will be determined when an accounting for said trust is completed."
 
 
 79
 On January 17, 1985, the Creditor's Claim submitted by Norma Applegate on behalf of the Trust was approved as a contingent claim by Roberta Sue Thieman, as executrix of the estate. The claim was approved as a contingent claim by the Court on January 22, 1985. See Order Identifying Trial Exhibits, Plaintiff's Ex. B.
 
 
 80
 9. On March 4, 1985, Roberta Sue Thieman resigned as executrix of the Thieman Estate, and The First National Bank and Trust Company of Tulsa ("Successor Personal Representative"), was appointed successor personal representative by the District Court having jurisdiction over the probate.
 
 
 81
 10. On July 30, 1985, Norma Applegate, as trustee of the Gladys Thieman Trust, filed a lawsuit in Tulsa County District Court captioned Norma T. Applegate, as Successor Trustee of the Gladys M. Thieman Trust, Plaintiff, v. The First National Bank and Trust Company of Tulsa, as Successor Personal Representative of the Estate of F. Paul Thieman, Jr., Defendant, Cause No. CJ-85-4858. The lawsuit alleged Thieman's violations as Trustee and sought, among other things, recovery of specific assets which Applegate contended were misappropriated from the Trust by Thieman. On November 12, 1985, Norma Applegate, as Successor Trustee, amended her Petition and alleged that Thieman had drafted the trust and had breached the fiduciary duty owed by a lawyer to his client. On March 30, 1989, Norma Applegate filed her Second Amended Petition alleging negligence and mistake in addition to the allegations previously made.
 
 
 82
 11. Following the filing of the Amended Petition by Norma Applegate, as Successor Trustee, alleging that Thieman had violated his obligation as an attorney, the Successor Personal Representative notified General Accident that a claim had been made against Thieman's estate. General Accident undertook the defense of said case, pursuant to the terms and conditions of their policy, pursuant to a reservation of rights reserving their rights to deny coverage by reason of the exclusions of said policy.
 
 
 83
 12. After an examination of all the available records in the Trust by Gary Jackson for and on behalf of the Trust, and Brent Johnson, an accountant employed by the Successor Personal Representative, the amount of money missing from the trust was agreed to be the sum of $325,000.00. In addition, 2/3 of the value of certain stocks which had been in the possession of Thieman were returned to Norma Applegate, Successor Trustee of the Trust, as property of the Trust.
 
 
 84
 13. Norma Applegate, Trustee, and the Successor Personal Representative of the Thieman Estate entered into an agreement settling the contingent claim and submitted the same to the Court. On December 1, 1987, the Court entered its Order approving the settlement and setting the amount of the Trust's Creditor's Claim Trust at $325,000.00. This constituted a final adjudication as to the debt owed by the Thieman Estate to the Trust, as contemplated by the policy. See Order Identifying Trial Exhibits, Plaintiff's Ex. C.
 
 VI. EXHIBITS
 
 85
 The following exhibits were offered into evidence by plaintiff and received by the Court:
 
 
 86
 Plaintiff's Ex. General Accident (attached as Ex.
 "A"
 Insurance Policy A to July 24, 1990 Joint Statement of
 Undisputed Facts)
Plaintiff's Ex. January 22, 1987 (attached as Ex.
 "B"
 Creditor's Claim B to July 24, 1990 Joint Statement of
 Undisputed Facts)
Plaintiff's Ex. December 1, 1987 (attached as Ex.
 "C"
 Probate Order C to July 24, 1990 Joint Statement of
 Undisputed Facts)
Plaintiff's Ex. Gladys M. Thieman
 "D."
 Trust Agreement
 
 
 87
 Defendant First National Bank introduced no exhibits. Defendant Applegate introduced the following exhibits relating only to an objection asserted on attorney client privilege grounds: Defendant's Exhibits A-1, A-2, A-3, A-4, A-5 and A-6. Pursuant to Federal Rule of Evidence 105, the evidence was received for that sole and limited purpose. The defendant's privilege objection was overruled for the reasons set forth on the record.
 
 VII. WITNESSES
 
 88
 The plaintiff called the following witnesses at trial:
 
 
 89
 1. Edward J. Mysock, Jr.
 
 
 90
 2. Norma Applegate.
 
 
 91
 3. Gary Jackson.
 
 
 92
 4. Jeff Morrow.
 
 
 93
 The defendant Applegate called the following witness at trial:
 
 
 94
 1. Norma Applegate.
 
 
 95
 Defendant First National Bank called no witnesses, although it cross-examined various witnesses presented by other parties.
 
 VIII. ADDITIONAL FINDINGS OF FACT
 
 96
 A. Mr. Edward Mysock testified on behalf of plaintiff. The credible testimony presented by this witness, as tempered by cross-examination, may be summarized as follows:
 
 
 97
 1. He is a duly licensed and practicing attorney in the State of Oklahoma specializing in tax and estate law. He represented Rebecca Sue Thieman, personal representative of the Estate of F. Paul Thieman, Jr., during her tenure as personal representative of the F. Paul Thieman, Jr., Estate. Prior to giving a deposition in this cause or submitting his affidavit he contacted Rebecca Sue Thieman, and she waived any attorney-client privilege relating to this matter.
 
 
 98
 2. He was acquainted with F. Paul Thieman, Jr., during his lifetime and prepared tax returns for him on some of Thieman's business ventures.
 
 
 99
 3. Following the death of F. Paul Thieman, Jr., his widow, Rebecca Sue Thieman, requested that he represent her in her capacity as personal representative of her husband's estate. He accepted employment and commenced a search to determine the assets and liabilities of the estate.
 
 
 100
 4. He spent many hours searching for assets in this country, Europe and elsewhere based on F. Paul Thieman's financial statements. He was unable to locate any evidence of substantial earnings by Thieman for several years prior to Thieman's death.
 
 
 101
 5. Mysock made an accounting of the Gladys M. Thieman Trust during a portion of the period of time that F. Paul Thieman, Jr. was trustee of the Trust (1983-84). His accounting revealed that substantial sums of money (at least in excess of $200,000) were missing from the Trust.
 
 
 102
 6. Upon F. Paul Thieman, Jr.'s death, his sister, Norma Applegate, became successor trustee of the Trust. She was advised of the missing funds. Mysock was contacted by her to assist her in locating assets of the Trust but because of the conflict of interest, he declined and recommended that she retain Gary Jackson to represent her as trustee.
 
 
 103
 7. Subsequent to the retention of Gary Jackson by Norma Applegate, a creditor's claim was filed by the Gladys M. Thieman Trust. The claim reads as follows:
 
 
 104
 The claim is for funds and assets misappropriated from said Trust by decedent while decedent was serving as trustee of said Trust, and is in an amount not less than $250,000 nor more than $1,000,000.
 
 
 105
 The actual amount of the claim will be determined when an accounting for said Trust is completed.
 
 
 106
 See Order Identifying Trial Exhibits, Plaintiff's Ex. 8.
 
 
 107
 8. Mysock did not have sufficient facts to determine the exact amount of the claim. The personal representative approved the claim as a contingent claim. The exact amount of the claim was to be determined after an accounting of the Trust.
 
 
 108
 9. The personal representative was aware of the existence of the insurance policy covering F. Paul Thieman, Jr. in his practice of law. The personal representative did not make a claim under the policy, nor did Mysock make a claim under the policy.
 
 
 109
 10. Deposits were made to the Trust during Thieman's tenure as trustee, but Mysock did not know the source of these deposits.
 
 
 110
 11. The Mysock affidavit, which represented Mysocks direct examination, was inartfully drafted, failing to track the testimony Mysock intended to give. Moreover, the affidavit was reviewed and signed in haste by the witness Mysock. The affidavit contained numerous errors and misstatements and was thoroughly impeached on cross examination. An accurate summary of the impeachment areas as set forth in the first three transcript pages of closing argument by Mr. Gotwals, Applegate's attorney. As a result, the credibility of this witness in this proceeding was substantially impeached. Other than the express findings above, the Court has placed no weight on this testimony.
 
 
 111
 B. Ms. Norma Thieman Applegate was the plaintiff's second witness. Her testimony was as follows:
 
 
 112
 1. She is the daughter of Gladys M. Thieman and the sister of F. Paul Thieman, Jr. In 1979, her mother formed the Gladys M. Thieman Trust which was to provide for Gladys Thieman's care and maintenance during her lifetime and upon her death was to be distributed equally between herself and her brother, F. Paul Thieman, Jr. The initial value of the Trust was thought to be between $600,000 and $900,000.
 
 
 113
 2. Her brother, F. Paul Thieman, Jr., was trustee of the Trust and was the only person who appears to have written checks or authorized expenditure of funds from the Trust. She was named as Successor Trustee in the event something happened to her brother.
 
 
 114
 3. In 1984, upon the death of her brother, F. Paul Thieman, Jr., she became Successor Trustee. She went to the Bank of Oklahoma to withdraw money from the Trust to pay expenses of Gladys M. Thieman and discovered that there was only $500.00 in the Trust Account.
 
 
 115
 4. She has made a diligent search and has been unable to locate any funds or assets of the Trust except for some Mobile stock which was recovered from her brother's Estate. She has been unable to determine what her brother, F. Paul Thieman, Jr., did with the rest of the Trust assets.
 
 
 116
 C. Mr. Gary Jackson was the plaintiff's third witness. His credible testimony, tempered by cross-examination and rulings of the Court, was as follows:
 
 
 117
 1. He is a Certified Public Accountant and Attorney at Law, specializing in tax planning. He was contacted by Ed Mysock who was representing Rebecca Sue Thieman, Personal Representative of F. Paul Thieman, Jr. Estate. He was advised by Mr. Mysock that there was a Trust involved in the Estate which created a conflict of interest for Mr. Mysock and requested that Mr. Jackson assist the successor trustee in preparing an accounting of Trust assets. Mr. Jackson was introduced to Norma Applegate, the Successor Trustee, and began reviewing the records turned over to him by Mr. Mysock. A review of all records available at that time indicated that a least $400,000 of Trust assets were not properly accounted for. After completing this review, Mr. Jackson assisted Norma Applegate's attorney in preparing a creditor's claim. Due to the fact that they had no definite information as to the original amount of Trust assets or the disposition thereof, the creditor's claim was in an amount not less than $250,000 nor more than $1,000,000, with the actual amount to be determined upon completion of an accounting of the Trust assets.
 
 
 118
 2. After reviewing all available records and conferring with an accountant from the firm of Hogan and Slovack, which was retained by First National Bank and Trust Company, Successor Personal Representative of F. Paul Thieman, Jr. Estate, the parties were able to account for certain Trust assets and they agreed upon a figure of $325,000 as the amount that could not be accounted for. The $325,000 figure represented money taken from the Gladys M. Thieman Trust and not known to be used for or held for the benefit of Gladys M. Thieman.
 
 
 119
 3. Jackson made no findings of dishonesty or criminal conduct with respect to F. Paul Thieman's conduct as trustee.
 
 
 120
 D. Mr. Jeffrey C. Morrow was plaintiff's fourth and final witness. He credibly testified as follows:
 
 
 121
 1. He is Vice President and Senior Trust Officer for the First National Bank and Trust Company of Tulsa, the Successor Personal Representative of the Estate of F. Paul Thieman, Jr., deceased. He is a duly licensed attorney in the State of Oklahoma.
 
 
 122
 2. The F. Paul Thieman, Jr. Estate was assigned to him by his supervisor in August, 1985. He reviewed the file and took necessary action to recover assets of the Estate. He reviewed all claims made against the Estate, most of which had already been submitted to the Court and approved as contingent claims.
 
 
 123
 3. He was aware that the Personal Representative's attorneys had written the insurance company requesting that it defend the suit brought by Norma Applegate as Successor Trustee of the Gladys M. Thieman Trust.
 
 
 124
 4. He consulted with the Personal Representative's attorneys on the matter and ultimately agreed to a settlement of the claim in the amount of $325,000 based on information provided to him by the Personal Representative's attorneys and accountants. The settlement was approved on the basis that the $325,000 was misappropriated by F. Paul Thieman, Jr. In this regard he was relying exclusively on the advice of his counsel, Conner & WinterB's counsel. He conducted no independent investigation of his own with respect to the nature of the alleged misappropriation.
 
 
 125
 E. Norma Thieman Applegate was called as the defendant's only witness. She credibly testified as follows:
 
 
 126
 1. The deceased, F. Paul Thieman, Jr., was her brother. Her mother set up a Trust in April of 1980 and appointed her brother, F. Paul Thieman, Jr., as Trustee. She was appointed as Successor Trustee should anything ever happen to her brother. Upon her brother's death, she became the Successor Trustee and held that position at the time of trial.
 
 
 127
 2. During her brother's administration of the Trust, her mother's needs were totally taken care of by her brother. Her mother's bills were paid regularly and kept current by her brother.
 
 
 128
 3. At no time, prior to her brother's death, did her mother, to her knowledge, ask her brother for an accounting of the Trust assets. As a beneficiary of the Trust, Applegate had the right to ask for an accounting, but never did. There was never any hint of a problem with the Trust assets. Her brother had the complete right to invest the funds as he saw fit, and there was never any complaint by her mother or by her brother that the Trust lacked funds, or could not pay her mother's bills.
 
 
 129
 4. Her mother had complete faith in her brother Paul. Had her mother known that he was commingling her funds with his own, her mother would have acquiesced. If Applegate had known at the time that he was commingling the funds, she too would have acquiesced. The Trust gave her brother the complete right to make investments, and she had no reason to doubt his honesty and integrity.
 
 
 130
 5. Her attorneys, Gary Jackson and James Gotwals, created the creditor's claim to be filed in the Probate action. After reviewing the creditor's claim, she signed the same. Her attorney, James Gotwals, also created the pleadings which were filed in the CJ-85-4858 case.
 
 
 131
 F. F. Paul Thieman, Jr. had broad powers under the Trust. He had the power to hold assets in his own name. He had the power to invest without disclosing his fiduciary capacity. He had the power to hold assets without noting their financial holdings. Given these powers, missing Trust assets may never be located. The Trustee's powers during the Grantor's lifetime included the following:
 
 
 132
 (a) All those powers prescribed in the Oklahoma Trust Act, and without limiting the foregoing, shall have the following express powers:
 
 
 133
 * * *
 
 
 134
 * * *
 
 
 135
 (iii) The trustee shall not be responsible for any action taken in good faith with respect to any investment of the trust estate, or for any loss or depreciation resulting from the purchase, retention, sale, exchange, lease or alteration of any investment, or from any want of diversification of the investment of the trust estate. [Plaintiff's Exhibit D.].
 
 
 136
 G. The Creditor's Claim filed by Norma Applegate, as Trustee of the Gladys M. Thieman Trust, in December, 1984 asserted misappropriation of the part of Thieman as Trustee. The Creditor's Claim did not include any reference to professional malpractice or any other act covered under the insurance policy. The sole basis for recovery set forth in the Creditor's Claim was misappropriation of funds by the Trustee, F. Paul Thieman, Jr.
 
 
 137
 H. The policy specifies that it does not apply to any judgment or final adjudication based upon or arising out of any dishonest, deliberately fraudulent, criminal, maliciously or deliberately wrongful acts or omissions committed by the insured F. Paul Thieman, Jr. It contains no specific provision regarding misappropriation.
 
 
 138
 I. The December 1, 1987 probate order contains no finding of dishonesty on the part of F. Paul Thieman, Jr. Nor does it contain specific findings on any of the other categories covered by the exclusion. Moreover, the order contains no specific finding of misappropriation on the part of F. Paul Thieman, Jr. The order merely approves a settlement of $325,000 as a contingent claim based upon an allegation of misappropriation.
 
 
 139
 J. The plaintiff, General Accident Insurance Company, has not met its burden of proving by a preponderance of the evidence that the December 1, 1987 probate order was based upon, or arose out of, acts or omissions of the insured which triggered the exclusionary provision of the policy.
 
 
 140
 K. The December 1, 1987 probate order does not represent a judgment or final adjudication based upon or arising out of any dishonest, deliberately fraudulent, criminal, maliciously or deliberately wrongful acts or omissions committed by the insured. It contains no specific provision regarding misappropriation, nor any findings which would trigger the exclusionary provision.
 
 
 141
 L. The December 1, 1987 probate order arose out of a settlement which included more than just the creditor's claim. Applegate, as a condition of this settlement, was required to dismiss with prejudice all claims for accounting made in her related state court civil case. Plaintiff in this case clearly recognizes the connection between the probate case and the state court civil case, having proposed a judgment which would find that General Accident is not obligated to indemnify FNB against any judgment rendered in CJ-85-4858. This same case number is discussed previously in finding # 10, Section V, supra. To the extent the December 1, 1987 probate order arose in part out of a settlement of the state court proceeding (whether in whole or in part) this further prevents this Court from finding that the December 1, 1987 probate order was based upon or arose out of one of the exclusionary categories. As noted in finding # 10, supra, the state court proceeding contained numerous allegations, some of which were clearly outside the exclusionary provisions, and within the policy's coverage provisions.
 
 
 142
 M. The December 1, 1987, probate order does not represent a judgment or final adjudication falling within the exclusionary provisions of the General Accident policy.
 
 
 143
 N. Any finding of fact in this order which should more appropriately be considered a conclusion of law is hereby deemed a conclusion of law. Likewise, any conclusion of law set forth in this order which should more appropriately be deemed a finding of fact is hereby deemed to be a finding of fact.
 
 IX. CONCLUSIONS OF LAW
 A. Interpretation of Insurance Contract
 
 144
 The Court "cannot change the terms of an unambiguous contract." Traverse v. World Service Life Ins. Co., 436 F.Supp. 810, 811 W.D.Okla.1977. However, if the language in an insurance policy is ambiguous or equivocal, it must be construed in favor of the insured and against the insurer. Houston v. National General Ins. Co., 817 F.2d 83, 85 (10th Cir.1987).
 
 
 145
 Furthermore, the terms of an insurance policy must be interpreted not in a technical sense but rather should be construed "according to their plain, ordinary and accepted use in common speech, unless it affirmatively appears that a different meaning was intended." Id. (quoting National Aviation Underwriters, Inc. v. Altus Flying Service, Inc., 555 F.2d 778, 782 (10th Cir.1977)).
 
 
 146
 Finally, "an insurance policy's words of exclusion are to be narrowly viewed and its words of inclusion are to be broadly viewed." Conner v. Transamerica Ins. Co., 496 P.2d 770, 774 (Okla.1972).
 
 
 147
 The insurance policy at issue here does not define "misappropriation" nor does it define "dishonesty" or any of the other words used in the subject exclusionary provision. These words are susceptible of a range of reasonable meanings. In such a case, "the Court must apply the meaning which provides the most coverage for the insured." Houston, 817 F.2d at 85 (quoting Poland v. Marten, 761 F.2d 546, 548 (9th Cir.1985)).
 
 
 148
 The exclusionary provision at issue in this case reads as follows:
 
 1. This policy does not apply
 
 149
 (a) to any judgment or final adjudication based upon or arising out of any dishonest, deliberately fraudulent, criminal, maliciously or deliberately wrongful acts or omissions committed by the insured.
 
 
 150
 The December 1, 1987 probate order unquestionably was both "based upon" and "arose out of" an allegation of misappropriation of trust assets by deceased attorney Thieman. Indeed, misappropriation by attorney Thieman was the only allegation that formed the basis of the creditor's claim. See Order Identifying Trial Exhibits, Plaintiff's Ex. B. ("The claim is for funds and assets misappropriated from said trust by decedent while decedent was serving as trustee of said trust ..."). If the exclusionary language of the policy contained the phrase "any judgment or final adjudication based upon or arising out of any misappropriation committed by the insured," this case would be easily resolved in favor of plaintiff General Accident. The policy, however, does not contain such language. As a result, the central question in this case is whether "misappropriated", as used in the December 1, 1987 probate order, is the functional equivalent of any of the following, any one of which would trigger the exclusionary provision:
 
 
 151
 (a) dishonest acts or omissions;
 
 
 152
 (b) deliberately fraudulent acts or omissions;
 
 
 153
 (c) criminal acts or omissions;
 
 
 154
 (d) maliciously wrongful acts or omissions;
 
 
 155
 (e) deliberately wrongful acts or omissions.
 
 
 156
 See Order Identifying Trial Exhibits, Plaintiff's Ex. A.
 
 
 157
 Plaintiff's counsel believes "misappropriated" is more analogous to the phrase "dishonest acts" than any of the other categories contained in the exclusionary provision. As defense counsel conceded in closing argument following questions by the Court, if "misappropriated" is the functional equivalent of "dishonest acts" (or any of the other four categories above) then the exclusionary provision applies. In this regard, defendant Applegate concedes that misappropriation may involve the commission of dishonest acts. According to Applegate, however, misappropriation does not necessarily involve the commission of dishonest acts or intentional wrongdoing. Moreover, the defendant contends, accurately, that the exclusionary language of the insurance policy here at issue must be strictly construed against the plaintiff General Accident. Conner v. Transamerica Ins. Co., 496 P.2d 770 (Okla.1972).
 
 
 158
 B. The Term Misappropriation Does Not Necessarily Involve Dishonesty
 
 Dishonest means:
 
 159
 1. not honest; disposed to lie, cheat, or steal; not worthy of trust or belief.
 
 
 160
 2. proceeding from or exhibiting lack of honesty; fraudulent.
 
 
 161
 The Random House Dictionary of the English Language, Unabridged Edition at 412 (1983).
 
 Misappropriate means:
 
 162
 1. to put to a wrong use.
 
 
 163
 2. To apply wrongfully or dishonestly, as funds entrusted to one's care.
 
 
 164
 Id. at 915.
 
 
 165
 Black's Law Dictionary defines misappropriation as:
 
 
 166
 The act of misappropriating or turning to a wrong purpose: wrong appropriation; a term which does not necessarily mean peculation, although it may mean that. Term may also embrace the taking and use of another's property for sole purpose of capitalizing unfairly on good will and reputation of property owner.
 
 
 167
 Blacks' Law Dictionary at 901 (Fifth Ed.1979).
 
 
 168
 While it is clear that misappropriation, by definition, can and probably most often does involve dishonesty, the Court cannot conclude that misappropriation always involves dishonesty. It is not difficult to conceive of a set of facts under which misappropriation is "wrong" without necessarily being "dishonest." For example, suppose a trustee is authorized to invest trust funds only in General Motors Corporation stock, but one time she mistakenly invests in Ford Motor Company stock. A misappropriation? Yes. Dishonesty? Not necessarily.
 
 
 169
 This distinction is characterized by the case of United States v. Omaha Tribe of Indians, 253 U.S. 275, 40 S.Ct. 522 (1920). In that case the President of the United States was deemed to be the trustee of certain funds of the Omaha Indian Tribe pursuant to an 1854 treaty. The President authorized the use of trust funds to construct an infirmary on the Omaha reservation. The Court of Claims, which had jurisdiction to hear and determine, inter alia, claims for misappropriation of the tribe's funds "for purposes not for its material benefit," determined that the building was not used by the tribe and was not a building contemplated by the treaties. Id. at 281, 40 S.Ct. at 524. The United States Supreme Court held that the use of the tribe's funds for this building did not result in a material benefit for the tribe and therefore was a misappropriation" of the funds. This finding of a "misappropriation" however, did not connote dishonesty or theft on the part of the President of the United States. Rather, it simply meant the infirmary building "was not what it ought to have been" and the tribe "received no benefit from it." Id.
 
 
 170
 The cases cited and discussed by plaintiff General Accident clearly suggest that in many, if not most, factual situations involving misappropriation, the facts giving rise to misappropriation will also support a finding of dishonesty, fraud, deceit, or maliciously or deliberately wrongful acts. For example, in Standard Accident Ins. Co. v. Stewart, 184 Okla. 109, 85 P.2d 277 (1938), the Oklahoma Supreme Court held that an illegal act by a guardian resulting in a loss constitutes a misappropriation. But this is not the same as saying misappropriation is always an illegal act. Likewise, in Rabideau v. Schmitt, 404 So.2d 519 (La.App.1981), the court held that theft of securities by an attorney holding the securities for his client constituted a "dishonest, fraudulent, criminal or malicious act" and was therefore not covered by the attorney's malpractice insurance. But again, this case cannot be said to stand for the proposition that misappropriation always constitutes a dishonest, fraudulent, criminal or malicious act. In Morris v. Board of Commissioners of Adams County, 139 P. 582 (Colo.App.1914), the court analyzed the meaning of the word "misappropriation" as used in Rev.St. (1908) § 1251 and held: "The word 'misappropriation', as used in this act, ... contemplate(s) something more than mere mistake in judgment.... It implies tortious or fraudulent conduct on the part of the misappropriator." Id. at 583. This language supports defendant's position because it clearly acknowledges that misappropriation can involve a "mere mistake in judgment."
 
 
 171
 Both parties cited Johnston v. Turner, 159 Ala. 356, 47 S. 570 (1908) in support of their respective positions. The Court concludes it clearly supports defendant's position. The Alabama Supreme Court in this defamation case considered whether an allegation that another person misappropriated public funds constituted defamation per se. The court stated that although misappropriation "is susceptible of imputing a meaning of dishonesty," id. at 571, "considered alone, the word does not necessarily, in all cases, mean dishonesty." Id. at 571.
 
 
 172
 C. Misappropriation By A Trustee Of Trust Funds
 
 
 173
 As referenced in the December 1, 1987 probate order, and in the creditor's claim filed by Applegate in this case, misappropriation is not necessarily a dishonest or deliberately wrongful act committed by the insured.
 
 
 174
 At the time she filed her creditor's claim, defendant Applegate was aware of the Mysock accounting results. She was also aware that $500 was left in the Trust account. She was also aware, however, of the broad powers that Thieman held under the Trust. Given this background, the Court has little doubt that Applegate and her attorneys subjectively believed Thieman had engaged in a dishonest form of misappropriation when she filed her creditor's claim. That, however, is not the issue before the Court. The question is, rather, whether Applegate's allegation of misappropriation, which resulted in the December 1, 1987, probate order, renders that order a "judgment or final adjudication based upon or arising out of any dishonest, deliberately fraudulent ... or deliberately wrongful acts...." committed by Theiman. Given the above referenced rules of interpretation, and the discussion below, the Court concludes the question must be answered in the negative.
 
 
 175
 A key issue in this case is the evidence the Court may consider in determining the meaning of the word "misappropriated" as used in the December 1, 1987, probate order.
 
 
 176
 General Accident contends the Court may consider all pertinent background information gathered and made known to Applegate prior to her filing of the creditor's claim in which she alleged misappropriation by a trustee. This information, plaintiff contends, helps explain whether the December 1, 1987 probate order was based upon or arose out of any of the categories of proscribed conduct.
 
 
 177
 Applegate contends, on the other hand, that the Court may not consider extrinsic evidence in determining the meaning of "misappropriated" as used in the December 1, 1987 probate order, but instead is limited to the judgment roll before the probate court in determining the meaning of "misappropriated".[1]
 
 
 178
 If Applegate is correct, the Court would be compelled to rule in favor of Applegate because it would be required to interpret the word "misappropriated" in a vacuum without reference to extrinsic evidence in this case. Because the term misappropriated, viewed in isolation, may or may not involve dishonest or deliberately wrongful conduct, and because the Court could not take into consideration any extrinsic evidence concerning the nature of in the creditor's claim filed by Applegate, the Court would be compelled to resolve this ambiguity in favor of Applegate.
 
 
 179
 The four cases cited by defendant are dispositive. Timmons dealt primarily with the issue of prejudgment and post-judgment interest under 12 O.S. § 727, but a sub-issue involved the impropriety of resorting to materials outside the judgment roll in attempting to divine the meaning and/or effect of a final judgment from a prior case. The Oklahoma Supreme Court rejected the insurer's argument that if the judgment roll is ambiguous the Court must look to the evidence adduced at trial and the instructions given in the course of the proceedings. Timmons, 713 P.2d at 591-92. Chandler likewise dealt primarily with issues other than how to determine the meaning and/or effect of a final judgment in a prior case. However, as in Timmons, this was a sub-issue and, as in Timmons, the Oklahoma Supreme Court clearly held that any controversy over the meaning and effect of a final judgment must be resolved by resorting solely to the face of the judgment roll. Chandler, 741 P.2d at 861 n. 7.
 
 
 180
 These two cases strongly suggest the Court should not consider evidence adduced prior to the probate settlement, and especially should not consider facts which were not even before the probate court in the underlying action. Moreover, in National Union the court considered a similar exclusionary provision in an insurance policy and stated that where the underlying case had been settled, a finding of dishonesty in that litigation was no longer possible and therefore the exclusion could not apply. National Union, 666 F.Supp. at 38. Finally, in Atlantic the court considered a similar exclusionary provision and likewise held the provision inapplicable because there had been no final adjudication of dishonesty. In that case even the insurance company conceded that "mere allegations of dishonesty in the underlying action would not suffice to trigger the exclusion." Atlantic, 839 F.2d at 217.
 
 
 181
 Thus, the Court agrees with defendant that it must determine the meaning of "misappropriated" in this case without reference to extrinsic facts. With its review confined to the judgment roll, the Court concludes the use of the word "misappropriated" in the December 1, 1987, probate order, is not sufficient to trigger the exclusionary provision of the insurance policy.
 
 
 182
 However, even if the Court is incorrect in its decision as a matter of law to confine its review to the judgment roll, the factual findings in this case, as set forth above, do not compel a different conclusion. The credible extrinsic evidence presented by plaintiff simply is insufficient to support a finding of dishonesty or any of the other exclusion categories. The witness Mysock was the one witness who arguably could have provided a basis for such findings. His testimony, however, failed to convince the Court for the reasons set forth above. Moreover, even assuming arguendo that the Court had accepted all of Mysock's testimony, the December 1, 1987, order at best, would be nothing more than a final adjudication arising out of an allegation of dishonest misappropriation. Finally, the linkage between the December 1, 1987 probate order and the simultaneous settlement of related claims in pending state court action, some of which fell squarely within the policy's coverage provisions, further muddies the water. Thus, even if the Court were to follow the approach suggested by plaintiff, these ambiguities would likewise compel a result in favor of the insured.
 
 
 183
 The Court further concludes defendants are entitled to post-judgment interest, pursuant to 28 U.S.C. § 1961. Everaard v. Hartford Accidental and Indemnity Co., 842 F.2d 1186, 1193-94 (10th Cir.1988).
 
 VIII. JUDGMENT
 
 184
 A Judgment reflecting the ruling of the Court is being filed contemporaneously with this Order.
 
 
 185
 IT IS SO ORDERED THIS 13th DAY OF SEPTEMBER, 1990.
 
 
 186
 /s/ Layn R. Phillips
 
 LAYN R. PHILLIPS
 UNITED STATES DISTRICT JUDGE
 
 187
 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
 
 DISTRICT OF OKLAHOMA
 GENERAL ACCIDENT INSURANCE COMPANY
 
 188
 OF AMERICA,
 
 
 189
 Plaintiff,
 
 
 190
 vs.
 
 FIRST NATIONAL BANK AND TRUST COMPANY
 OF TULSA, a national banking
 
 191
 association, as successor personal
 
 
 192
 representative of the estate of
 
 
 193
 F. Paul Thieman, Jr., deceased; and,
 
 NORMA APPLEGATE, successor trustee of
 
 194
 the Gladys M. Thieman Trust, and
 
 F. Paul Thieman and Gladys M. Thieman
 
 195
 Trust, Defendants.
 
 JUDGMENT
 No. 88-C-254-P
 
 196
 Filed Sept. 13, 1990.
 
 
 197
 The Court finds that the December 1, 1987 probate "Order Approving Settlement of Creditor's Claim" does not trigger the exclusionary language of General Accident's Professional Liability Policy.
 
 
 198
 The Court therefore enters judgment against plaintiff in the amount of $325,000 plus post-judgment interest at the rate of 7.95%.
 
 
 199
 ENTERED THIS 13 DAY OF SEPTEMBER, 1990.
 
 
 200
 /s/ Layn R. Phillips
 
 LAYN R. PHILLIPS
 UNITED STATES DISTRICT JUDGE
 
 201
 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
 
 DISTRICT OF OKLAHOMA
 GENERAL ACCIDENT INSURANCE
 
 202
 COMPANY OF AMERICA,
 
 
 203
 Plaintiff,
 
 
 204
 vs.
 
 FIRST NATIONAL BANK AND TRUST
 COMPANY OF TULSA, a national
 
 205
 banking association, as
 
 
 206
 successor personal
 
 
 207
 representative of the estate
 
 
 208
 of F. PAUL THIEMAN, JR.,
 
 
 209
 deceased; and, NORMA
 
 APPLEGATE, successor trustee
 
 210
 of the Gladys M. Thieman Trust,
 
 
 211
 and F. Paul Thieman and Gladys
 
 
 212
 M. Thieman Trust, Defendants.
 
 ORDER
 No. 88-C-254-P
 
 213
 Filed Nov. 16, 1990.
 
 
 214
 For the reasons set forth on the record at the hearing held on November 16, 1990, the Court ruled as follows:
 
 
 215
 1. Defendants' attorney fee request is DENIED.
 
 
 216
 2. Plaintiff's request for pre-judgment interest is DENIED.
 
 
 217
 3. Plaintiff's request for entry of a monetary judgment is GRANTED.
 
 
 218
 4. Plaintiff's request for post-judgment interest is GRANTED in part and DENIED in part.
 
 
 219
 5. Plaintiff's motion to retax cost is GRANTED in part and DENIED in part, and $162.25 is added to the Clerk's award for a total amount of $762.30.
 
 
 220
 All findings and conclusions as set forth on the record are hereby incorporated by reference.
 
 
 221
 IT IS SO ORDERED this 16th day of November, 1990.
 
 
 222
 /s/ Layn R. Phillips
 
 LAYN R. PHILLIPS
 United States District Judge
 
 
 *
 The Honorable Elmo B. Hunter, Senior Judge, United States District Court for the Western District of Missouri, sitting by designation
 
 
 [1]
 Applegate relies on the following four cases: Timmons v. Royal Globe Insurance Co., 713 P.2d 589 (Okla.1985) (the judgment roll consists of the petition, the process, the return, the pleadings subsequent thereto, reports, verdicts, judgments, and all material acts and proceedings of the court); Chander v. Denton, 741 P.2d 855 (Okla.1987); Atlantic Permanent Federal Savings and Loan v. American Casualty Co., 839 F.2d 212 (4th Cir.1988), cert. denied, 486 U.S. 1056; National Union Fire Ins. Co. of Pittsburgh v. Continental Illinois Corp., 666 F.Supp. 1180 (N.D.Ill.1987)